UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 07-196-JBC

RHONDA BAILEY, PLAINTIFF,

V.   MEMORANDUM OPINION AND ORDER

MINNESOTA LIFE INSURANCE COMPANY, DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the plaintiff's motion to remand, R. 24, and the defendant's motion for leave to amend its notice of removal. R. 27. The court, having reviewed the record and being otherwise advised, will deny the defendant's motion, grant the plaintiff's motion, and remand this matter to the Montgomery Circuit Court.

**I.   Background**

Rhonda Bailey, the widow of Franklin Lee Bailey, filed suit in Montgomery Circuit Court against Minnesota Life Insurance Company ("Minnesota Life") after several failed internal appeals from a denial of benefits. R. 1-1. The policy at issue was an accidental death and dismemberment ("AD&D") policy offered by Minnesota Life as a component plan through the benefits program, NesCare, of Mr. Bailey's employer, Nestle USA, Inc. ("Nestle"). R. 13-1, 1. The defendant removed the case to this court, claiming that it presents a federal question under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

1

("ERISA"). R. 1-4, 1-5. At issue is the defendant's denial of benefits, including a $500,000.00 death benefit, under the AD&D policy, on the grounds that Bailey's death was caused by "driving a vehicle while intoxicated" and, therefore, "was foreseeable." R. 1-1.

On January 9, 2008, the court granted a motion for limited discovery by the plaintiff. R. 15. After completing that discovery, she moved to remand the action. The defendant raised the issue of diversity jurisdiction for the first time during the briefing of the plaintiff's motion to remand and, five days after the plaintiff's motion became fully briefed, filed the motion for leave to amend its notice of removal that is also at issue here.

II.     **Motion to Amend Notice of Removal**

   A.   **Legal Standards**

The defendant states that its motion is under Fed. R. Civ. P. 15. R. 27, at 2. Rule 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a pleading is served or, if the pleading is one to which no responsive pleading is permitted . . ., the party may so amend it . . . within 20 days after it is served." Otherwise, according to the Rule, a pleading may be amended "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

A defendant must remove a civil action to federal court within thirty days of its being filed or the defendant's being served with the initial pleading, whichever is shorter. 28 U.S.C. § 1446(b). Otherwise, a defendant may remove an action

>  within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

*Id.*

### B.    Analysis

Under either of the standards enunciated above – Rule 15 or the removal statute – the court must deny the defendant's motion to amend its notice of removal. The motion to amend came well after the onset of this action. Removal occurred on June 21, 2007, but the defendant filed the instant motion over a year later, on June 30, 2008, after the plaintiff had filed several pleadings, all of which required responses. Thus, assuming for the purpose of this motion that Rule 15 applies, the standard in that Rule by which the court must measure the instant motion is whether "justice so requires."

Justice does not require such an amendment, however. The defendant removed this action on June 21, 2007, based solely upon its allegation that the case presents a federal question. In the year between the defendant's filing of its notice of removal and its present motion to amend that notice, the plaintiff reasonably assumed that federal question was the only basis of jurisdiction being asserted by the defendant. Accordingly, she moved for limited discovery to assist with determining whether ERISA's safe-harbor provisions apply (a motion opposed by the defendant); took limited discovery after it was granted by the court; and

3

filed a lengthy motion to remand. Allowing the defendant to amend its notice of removal to assert diversity jurisdiction at this late date would create an unjust result. Thus, Rule 15 cannot be a basis to allow such an amendment.

III.  **Motion to Remand**

    A.  **Legal Standard**

The plaintiff bases her motion to remand on an assertion that the court lacks subject-matter jurisdiction because the action does not present a federal question. A federal question exists when an action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). As the removing party, the defendant bears the burden of proving the existence of federal jurisdiction. *Eastman v. Marine Mechanical Corp.,* 438 F.3d 544, 550 (6th Cir. 2006); *Long v. Bando Mfg. of Am. Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). Removal statutes are construed narrowly, and doubts about the propriety of removal are resolved in favor of remand. *Long*, 201 F.3d at 757.

    B.  **Analysis**

The plaintiff argues that the AD&D policy at issue here is not governed by ERISA. A court should conduct a three-step factual inquiry to determine whether a plan is governed by ERISA:

> First, the court must apply the so-called 'safe harbor' regulations established by the Department of Labor to determine whether the program was exempt from ERISA. Second, the court must look to see

4

> if there was a 'plan' by inquiring whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits. Finally, the court must ask whether the employer "established and maintained" the plan with the intent of providing benefits to its employees.

*Thompson v. American Home Assur. Co.*, 95 F.3d 429, 434-35 (6th Cir. 1996) (internal citations and quotations marks omitted).

1.  *"Safe Harbor" Provisions*

Under the ERISA "safe harbor" regulations laid out by Department of Labor regulations, an employee insurance policy is excluded from ERISA coverage if the following four prongs are satisfied:

> (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Thompson*, 95 F.3d at 435 (6th Cir. 1996) (citing 29 C.F.R. § 2510.3-1(j)). The defendant concedes that the plaintiff can satisfy the first, second and fourth prongs but argues that the plaintiff cannot satisfy the "endorsement" prong.

"[T]he relevant framework for determining if endorsement exists is to examine the employer's involvement in the creation or administration of the policy from the employees' point of view." 95 F.3d at 436-37. "[A] finding of endorsement is appropriate if, upon examining all the relevant circumstances, there is some factual showing on the record of substantial employer involvement in the

5

creation or administration of the plan." 95 F.3d at 436. The factors *Thompson* points to "for courts to use in determining whether an employer behaved neutrally towards a plan" are:

> (1) Has the employer played an active role in either determining which employees will be eligible for coverage or in negotiating the terms of the policy or the benefits thereunder?
>
> (2) Is the employer named as the plan administrator?
>
> (3) Has the employer provided a plan description that specifically refers to ERISA or that the plan is governed by ERISA?
>
> (4) Has the employer provided any materials to its employees suggesting that it has endorsed the plan?
>
> (5) Does the employer participate in processing claims?

*Booth v. Life Ins. Co. of North America*, 2006 U.S. Dist. LEXIS 82856, at *6-7 (W.D. Ky. 2006) (citing *Thompson*, 95 F.3d at 437). A finding of the applicability of one or more of these factors "may" support a finding that the policy was endorsed. *Id.* at *7. Moreover, endorsement can be either a factual or a legal issue:

> The question of endorsement *vel non* is a mixed question of fact and law. In some cases the evidence will point unerringly in one direction so that a rational factfinder can reach but one conclusion. In those cases, endorsement is a question of law. . . . In other cases, the legal significance of the facts is less certain, and the outcome will depend on inferences that the factfinder chooses to draw. . . . In those cases, endorsement becomes a question of fact.

*Id.* at 437 (citing *Johnson v. Watts Regulator Co.*, 63 F.3d 1129 (1st Cir. 1995)

(citations omitted)) (quotation marks omitted).

      a.    *Role of Nestle in determining terms and eligibility for coverage*

As to the first *Booth* factor, the plaintiff argues that Nestle played a "minimal" role in determining the terms of the policy and eligibility for coverage, only providing information and possibly having input into the inclusion of an additional accidental death benefit for employees who died wearing seatbelts. While the information provided to employees to explain the component plan, which included the AD&D policy at issue here, did provide a detailed account of which employees were eligible to participate, *see* AR 565-67, it also noted several important restrictions imposed by the defendant. These restrictions were laid out in the "Overview of NesCARE" given to Nestle employees and included the following:

> Participation in a Component Plan may be limited or restricted. As a result, not all Coverage Options of NesCARE are available to all Participants. In addition, the effective date of insurances or coverages under a Component Plan may be delayed or depend on evidence of insurability. You should review the summary of the Component Plan in which you have an interest to determine if you or your Dependents are eligible, when your insurance or coverage becomes effective, and whether you must provide evidence of insurability.

AR 565. Nestle employees also could "elect the level of coverage [they] desire from the various options listed in the enrollment materials. Some options may be subject to evidence of insurability." AR 700. Given these limitations and restrictions, the defendant has not carried its burden as the removing party to show that reasonable employees would conclude that Nestle determined which

employees were eligible for coverage or that Nestle negotiated the terms of the policy instead of the defendant.

The defendant cites *Johnson v. Connecticut General Life Ins. Co.*, 2007 WL 2509866 (N.D. Ohio Aug. 30, 2007), in which the court found "that the employer played an active role in determining who was eligible for coverage." *Id.* at *3. In *Johnson*, however, the employer "allowed newly hired individuals to seek benefits without providing evidence of good health," and, in addition to the classifications used by Nestle, annual compensation, something determined by the employer (along with whether overtime, bonus, and additional pay would count toward annual compensation), "governed what benefits were available." *Id.* In contrast to the *Johnson* factors, a reasonable employee in the instant case would conclude that the defendant, as the insurer, was determining eligibility by determining whether limitations and restrictions, such as requirements for evidence of insurability, were met.

Details about the logistics of the relationship between Nestle and the defendant, *see, e.g.*, R. 28, at 7-8, which illuminate the "intent" of the employer, may not be raised to shift the focus away from the conclusions drawn from the perspective of a reasonable employee. *See Thompson*, 95 F.3d at 436. Moreover, while Nestle may have played a role in negotiating certain additional provisions for the AD&D policy, such as the additional seatbelt benefit or additional discounts, *see* R. 28, at 9-10, these negotiations would not have been apparent to the reasonable

employee, who would have no reason to conclude that the defendant's limitations and restrictions were negotiated by Nestle. In *Vazquez v. Paul Revere Life Ins. Co.*, 289 F. Supp. 2d 727, 731-32 (E.D. Va. 2001), endorsement was found where an employer's 30% discount "[belied] a subsidy and *constructive* contributions to Plaintiff's premium payments" and the employer "was required to approve an employee's plan before such employee could benefit from the 30% discount." *Id.* Here, if the defendant cannot specify in its brief the exact amount of "subsidy" its negotiations provided to employees, *see* R. 28, at 10-11, it is not reasonable to expect an employee to be able to do so. Nor did Nestle employees have to receive approval from Nestle for any subsidy, rendering *Vazquez* inapposite to the present case.

> b.    *Whether Nestle was listed as the plan administrator*

As to the second *Booth* factor, the plaintiff argues that "[e]ven though Nestle is named as the plan administrator of the umbrella NesCARE Plan, Minnesota Life is the claim administrator of the AD&D plan." R. 24-2, at 10-11.

"[W]here the employer is named as the plan administrator, a finding of endorsement *may* be appropriate." *Thompson*, 95 F.3d at 436 (emphasis added). "[A]n employer can be a plan administrator in name only and still satisfy the four requirements of the safe harbor regulation." *Stuart v. UNUM Life Ins. Co. of America*, 217 F.3d 1145, 1152-53 (9th Cir. 2000) (also noting that "the evidence presented by the insured still allowed a reasonable person to conclude that the

9

employer satisfied the third requirement of the safe harbor regulation") (citing *Zavora v. Paul Revere Life Ins. Co.*, 145 F.3d 1118, 1121 (9th Cir. 1998)).

Being listed as plan administrator goes to the employer's role in administering the plan, *see Thompson*, 95 F.3d at 436, but the issue still must be analyzed "from the employee's point of view," *Id.* at 437. Here the listing of Nestle as plan administrator does not weigh in favor of endorsement because Minnesota Life was the claims administrator for the AD&D coverage, suggesting that, from the point of view of a reasonable employee, Nestle was the plan administrator "in name only." *Stuart*, 217 F.3d at 1153.

  c. *Mention of ERISA in the plan description*

As to the third *Booth* factor, the plaintiff argues that even though the NesCARE summary plan description does mention ERISA, it does so only near the end of the booklet and not in the section discussing AD&D coverage. The plaintiff also notes that, in the section discussing AD&D coverage, the NesCARE summary plan description states that the AD&D coverage is governed by its own insurance document, which does not mention ERISA. However, the NesCARE summary plan description does state that NesCARE is a "flexible benefit plan through which various Component Plans provide welfare benefits as defined under [ERISA]," AR 732, and outlines claimants' "rights and protections under [ERISA]." AR 733.

While the AD&D policy at issue here is in fact a NesCARE component plan, the court finds that this factor does not weigh heavily in favor of a finding of

endorsement because a few mentions of ERISA, including one buried in the back of a booklet, would do little to counter-balance the statement that the AD&D policy is governed by its own insurance document (which does not mention ERISA), from the perspective of a reasonable employee.

> d. *Whether the employer provided materials suggesting it had endorsed the plan*

As to the fourth *Booth* factor, the plaintiff argues that claim forms, the insurance policy, and denial letters bear Minnesota Life's logo and heading and there is only a small Nestle logo on the last page of the open enrollment guide. As noted by the defendant, the enrollment worksheet sent to the plaintiff confirmed the AD&D policy was part of NesCARE and provided a telephone number for Nestle's Human Resources service center, a number that also appears on the plan summary. AR 147.

The court finds that this factor also does not weigh heavily in favor of endorsement, because a few mentions within many pages of materials do not outweigh the overall paucity of mentions. From the perspective of a reasonable employee, such a small number of mentions do not necessarily suggest that Nestle endorsed the AD&D policy at all because a reasonable employee could conclude that Nestle was being helpful but impartial in providing the resources to its employees. This imbalance is magnified in light of the statement that the AD&D policy is governed by the defendant's insurance document, which mentions the

11

defendant prominently while "NesCARE" appears only once on the defendant's entire insurance document. Moreover, this single appearance of "NesCARE" has no context at all and a reasonable employee could at least as easily conclude that it was printed on the document for purposes of some type of administrative sorting function as he or she could conclude that it indicated endorsement of the AD&D policy by Nestle.

  e. *Whether the employer participated in processing claims*

As to the fifth, and final, *Booth* factor, the plaintiff argues that Nestle plays no role in processing claims beyond forwarding information to the defendant to aid in the processing of claims. The defendant points out that the plaintiff filed her initial claim with Nestle and that Nestle completed the claim and forwarded additional materials to the defendant. Deposition testimony by Gail Varhoe, Nestle's corporate representative, however, stated that filing a claim entailed "contact[ing] our Nestle Employee Service Center and report[ing] the death, and then the process was to send out a condolence letter and the applicable benefit statement that needed to be completed to file a claim *with the carrier*." R. 25, at 18 (emphasis added). While Nestle may have "participated" in the processing of claims, this factor also does not weigh heavily in favor of endorsement because a reasonable employee would have been aware at all times that Nestle was performing minor administrative tasks on behalf of the defendant.

  f. *Nestle did not endorse the AD&D policy*

Taking all of the *Booth* factors together, the court finds that Nestle did not endorse the AD&D policy at issue in this case. Nestle made it clear to reasonable employees that coverage decisions were up to the defendant; Nestle's materials clearly stated that the AD&D policy was governed by the defendant's own insurance document, which did not mention ERISA; the defendant, as the claims administrator, was the *de facto* plan administrator and Nestle was the plan administrator "in name only"; mentions of ERISA in the plan description were in passing; and Nestle's participation in the processing of claims was minimal. Consequently, the court finds that, when viewing all of the factors from the perspective of a reasonable employee, Nestle did not endorse the AD&D policy. Indications that the policy was endorsed by Nestle were few and were far outweighed by indicators that the policy was a Minnesota Life policy for which Nestle was merely passing information back and forth. Most importantly, there is a separate insurance document that does not mention ERISA, on which the word "NesCARE" appears only once, and that bears no indication of being anything other than a stand-alone plan. *See Oliver v. Sun Life Assurance Co. of Canada*, 417 F. Supp. 2d 865, 867 (W.D. Ky. 2005) ("[W]hen an employer separates itself from the plan, making it reasonably clear that the plan is a third-party offering, rather than hawking the plan to its employees as 'our plan,' and an integral part of its offering, the employer cannot be seen as endorsing the plan." (citing *Johnson*, 63 F.3d 1129)). *See also Thompson*, 95 F.3d at 436 ("[A]s long as the employer merely advises employees of the availability of group insurance, accepts payroll

deductions, passes them on to the insurer, and performs other ministerial tasks that assist the insurer in publicizing the program, it will not be deemed to have endorsed the program . . . . It is only when an employer proposes to do more, and takes substantial steps in that direction, that it offends the ideal of employer neutrality and brings ERISA into the picture." (citing *Johnson*, 63 F.3d at 1133).

### 2. Whether the AD&D Component Coverage Is an ERISA "Plan"

The plaintiffs argue that the AD&D policy is not an ERISA "plan."

"In determining whether a plan, fund or program [exists], a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Int'l Resources, Inc. v. New York Life Ins. Co.* 950 F.2d 294, 297 (6th Cir. 1991) (citation omitted). *International Resources* presents the classic ERISA "plan" scenario, because "International Resources did not merely advertise alternate plans and then refrain from making any contributions on behalf of its employees. Instead, International Resources chose the plan, paid the premiums, and gave this coverage to all of its employees as an employee benefit. *Id.* at 298 (citation omitted). Here, the plaintiff chose the plan and paid the premiums, but the policy was not given to all employees. Therefore, a reasonable employee would not conclude that the AD&D policy at issue in this case was an ERISA "plan." He or she would be more likely to conclude that Nestle was merely "advertising" the policy.

> *3. Whether Nestle "Established or Maintained" AD&D Coverage*

Finally, the plaintiff argues that Nestle did not "establish or maintain" the AD&D policy. As *Thompson* explains, the test is "whether the employer established or maintained the plan with the intent of providing benefits to its employees." 95 F.3d at 435. This analysis "should [focus] on the employer . . . and [its] involvement with the administration of the plan." *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991). In *McDonald v. Provident Indemnity Life Ins. Co.*, 60 F.3d 234 (5th Cir. 1995), the Fifth Circuit found that an employer "'established or maintained' the plan for the purpose of providing benefits to its employees" because it "purchas[ed] the insurance, select[ed] the benefits, identif[ied] the employee-participants, and distribut[ed] enrollment and claim forms." *Id.* at 236 (footnote omitted). Nestle was not nearly so active, going only so far as to make the insurance available and assisting with enrollment and the transfer of documents between its employees and the defendant. The defendant argues that Nestle identified the employees who could participate in the AD&D insurance but "the effective date of insurances or coverages under a Component Plan may be delayed or depend on evidence of insurability," AR 565, and Nestle employees could "elect the level of coverage [they] desire from the various options listed in the enrollment materials. Some options may be subject to evidence of insurability." AR 700. These elements of the policy, which indicate that the defendant retained control over which employees were "insurable," preclude the

15

court from finding that Nestle "established or maintained" the AD&D policy.

Because the court has found as matters of fact (1) that Nestle did not endorse the AD&D policy, (2) that the AD&D policy is not an ERISA "plan," and (3) that Nestle did not "establish or maintain" the AD&D policy, the court concludes that the AD&D policy at issue here is not governed by ERISA. Therefore, this action does not "arise under" ERISA and the court does not have jurisdiction over it. Consequently, the court must remand this matter to Montgomery Circuit Court.

### IV. Conclusion

Accordingly,

**IT IS ORDERED** that the defendant's motion to amend its notice of removal, R. 27, is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion to remand, R. 24, is **GRANTED**, and this matter is **REMANDED** to Montgomery Circuit Court.

**IT IS FURTHER ORDERED** that all remaining motions are **DENIED AS MOOT**.

This matter shall be **STRICKEN** from the active docket.

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY

16